IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 00-CR-40065-JPG |
| | ) | |
| COREY A. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO REDUCE SENTENCE PURUSANT TO THE FIRST STEP ACT**

The United States of America, by and through its attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Ali M. Summers, Assistant United States Attorney, responds to Defendant Corey Williams' Motion to Reduce Sentence Pursuant to the First Step Act follows:

## I.    Introduction

Defendant Williams has filed a motion to reduce sentence pursuant to Section 404 of the First Step Act of 2018, which made retroactive the portions of the Fair Sentencing Act of 2010 that lowered statutory penalties for certain offenses involving crack cocaine. The Fair Sentencing Act, enacted on August 3, 2010, did not apply retroactively to defendants like Williams who were sentenced before that date. As more fully explained below, the Government asserts that Williams is not eligible for

1

relief under Section 404 of the First Step Act because the same statutory penalties applied to the defendant's offense both before and after the Fair Sentencing Act.

Alternatively, the Government respectfully suggests that the Court stay this matter. On June 4, 2019, the Government filed its notice of appeal in *United States v. Vernon Trenton*, 04-CR-40079-NJR, Doc. 110, which is one of the decisions relied on by defendant in support of his position that *Alleyne* may be applied retroactively in these proceedings, *See* Seventh Circuit Appeal No. 19-2074. In addition, the Government has also filed a cross notice of appeal on the retroactivity issue in the Eighth Circuit. *See United States v. Goolsby*, Eighth Circuit Appeal No. 19-1754. Williams was sentenced to life imprisonment on July 10, 2001 and he has been in custody since July 13, 2000. Docs. 65, 67. Therefore, it is conceivable that if this Court were to impose the 262-month sentence requested by the defendant in his motion to reduce sentence Williams may be eligible for immediate release. As outlined in detail in this response, the Government asserts that Williams is absolutely not eligible for a reduction in his sentence and the district courts are currently in disagreement on the issues that drive that decision. If through these appellate proceedings it is determined that the Government is correct in its position, release of Williams from prison on this motion prior to resolution of the issue by the Circuit courts is a result that could not be undone. Therefore, the Government respectfully suggests that the Court stay this matter to allow the Court the benefit from the outcomes of these appeals in resolving the issue.

If, however, the Court were to disagree with the Government's position that Williams is not eligible for relief and declines to stay these proceedings, the Government asserts that the Court should determine whether to exercise its discretion to grant a reduction in sentence and, if so, to what extent based only on the existing Court record without a new hearing because the First Step Act does not authorize a plenary resentencing proceeding.

## II.   <u>Background</u>

On July 13, 2000, Williams was charged by indictment with one count of conspiracy to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A) and 846, five counts of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), and one count of felon in possession of a firearm. Doc. 1. On February 2, 2001, the Government filed an information pursuant to 21 U.S.C. § 851, alleging two qualifying prior convictions, which increased Williams' statutory minimum penalties on Count 1 from 10 years imprisonment to mandatory life imprisonment and increased the statutory maximum penalties on Counts 2-6 to 30 years imprisonment. Doc. 23. On February 26, 2001, a federal jury convicted Williams of conspiracy to distribute cocaine base as charged in Count 1, three counts of distribution of cocaine base as charged in Counts 2, 5 and 6, and felon in possession of a firearm as charge in Count 7. Docs. 37-44. The jury found Williams not guilty on Counts 3 and 4. Docs. 47-48. The jury also found that the

amount of cocaine base, as charged in the indictment, was more than 50 grams. *See* Docs. 37-44; Doc. 65, ¶ 10.

Prior to sentencing, the United States Probation Department prepared a Presentence Investigation Report ("PSR"). Doc. 65. Therein, it was determined that Williams' relevant conduct, that is the amount of crack involved in the conspiracy, was 1.19 kilograms. Doc. 65, ¶ 37. Based upon the 1.19 kilograms of cocaine base involved in the offenses, Williams had a base offense level of 36 under the U.S.S.G. § 2D1.1. Doc. 65, ¶ 44. The Probation Department also applied a two-level increase for possession of a firearm, for a total offense level of 38. Doc. 65, ¶¶ 45 & 53.  An offense level of 38, coupled with a criminal history category of VI, resulted in a guideline sentencing range of life imprisonment. Doc. 65, ¶¶ 69, 103, 104. During the sentencing hearing the Court adopted the findings in the PSR, including the determination that Williams' conduct involved between 500 grams and 1.5 kilograms of cocaine base. Doc. 67, p. 6; Doc. 65, ¶¶ 45 & 53. On July 10, 2001, the Court imposed a sentence of life imprisonment. Doc. 67.

On June 11, 2019, Williams, represented by counsel, filed the instant motion seeking a sentencing reduction under Section 404 of the First Step Act. Doc. 101.

### III.   <u>Analysis</u>

**A. Williams is not eligible for relief under Section 404 of the First Step Act because the same statutory penalties applied to his offense both before and after the Fair Sentencing Act.**

Section 404 of the First Step Act of 2018 ("First Step Act") makes retroactive the portions of the Fair Sentencing Act of 2010 ("Fair Sentencing Act") that lowered the threshold quantities triggering different statutory penalties for certain offenses involving cocaine base (crack cocaine).  The Fair Sentencing Act was enacted on August 3, 2010, and did not apply retroactively.

The First Step Act applies to "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Pub. L. No. 111–220; 124 Stat. 2372), that was committed before August 3, 2010," and provides that the court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Pub. L. 115-391, 132 Stat. 5194. Section 404(c) states, "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Pub. L. 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.  Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id*.

5

Section 2 of the Fair Sentencing Act increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Specifically, it raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams to 50 grams." Section 3 of the Fair Sentencing Act was also made retroactive. That section eliminated the provision in 21 U.S.C. § 844(a) that had imposed a five-year statutory-minimum sentence for possession of cocaine base, if the offense involved 5 grams or more.

Williams was convicted by a jury of conspiracy to distribute more than 50 grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(b)(1)(A). At sentencing, the Court adopted the finding of the presentence report that the offense involved at least 500 grams but not more than 1.5 kilograms of crack cocaine, a fact that Williams does not dispute. *See* Doc. 101; Doc. 67, p. 6; Doc. 65, ¶¶ 45 & 53. Thus, as established law at the time (2001) required, the Court determined Williams' statutory sentencing range for his conviction on Count 1 under 21 U.S.C. § 841(b)(1)(A), where that quantity of crack, coupled with the Government's § 851 notice, yielded a statutory penalty of mandatory life imprisonment. Doc. 65, ¶¶ 44, 103.

Williams is not eligible for relief under Section 404 of the First Step Act, which authorizes retroactive application of the Fair Sentencing Act of 2010, because the same statutory penalties applied to his offense both before and after the Fair Sentencing Act. The Fair Sentencing Act increased the threshold crack quantity for a Section 841(b)(1)(A) offense to 280 grams, but given that the quantity involved in

Williams' case (1.19 kilograms) exceeds that amount, the statutory penalties remain the same.

The defendant insists, however, that he is eligible because the indictment specifically charged an offense involving 50 grams or more of crack and, under the Fair Sentencing Act, the penalties for that quantity are lower: a maximum of 40 years and a minimum of 5 years, under Section 841(b)(1)(B).   He further contends that application now of higher penalties based on the court's original quantity finding at sentencing would violate the rules stated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). These arguments fail, as they are defeated by the pertinent statutory language and extensive precedent.

The government charged "more than 50 grams" of crack in the original indictment only because that was the pertinent statutory threshold at the time. But it is beyond dispute from the trial, the PSR, and the Court's own findings, that the defendant's conduct involved 1.19 kilograms of crack. Therefore, applying an artificial quantity now in this case would create a gross disparity with similarly situated offenders charged after the Fair Sentencing Act was adopted in 2010, defeating the plain Congressional intent in the First Step Act of assuring like treatment of like offenders. As explained below, the First Step Act does not permit that result.

Pursuant to 18 U.S.C. § 3582(c), "[t]he court may not modify a term of imprisonment once it has been imposed except that (1) . . . (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by

statute . . . ." The relevant statute here—the First Step Act—does not permit relief in this case.

> Section 404(b) of the First Step Act provides:
>
> A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Pub. L. 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(c) makes clear that any sentence reduction is discretionary, stating, "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

A straightforward reading of Section 404 calls for the court to make two sequential determinations: first, whether it may impose a reduced sentence, and second, if so, what sentence would have been appropriate had the Fair Sentencing Act been in effect at the time the defendant committed his crime. Here, the defendant's claim fails at the first step.

Section 404(b) authorizes a sentence reduction only if the court previously imposed a sentence for a "covered offense." A "covered offense," in turn, is a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before

8

August 3, 2010." The statute thus keys eligibility not on the defendant's statute of conviction, but on the specific "violation" that the defendant "committed." And a "violation" qualifies as a "covered offense" only if the "statutory penalties for" that violation were "modified by sections 2 or 3 of the Fair Sentencing Act."

By referring to a "violation" that was "committed" on a particular date, Section 404(a) sensibly grounds the eligibility inquiry in the actual conduct involved in the defendant's violation, rather than the statute under which the defendant was convicted. *In Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985), for instance, the Supreme Court held in the context of 18 U.S.C. § 1964(c) that the term "violation" "refers only to a failure to adhere to legal requirements," not a criminal conviction. The Court explained that when Congress wishes to refer to "prior convictions, rather than prior criminal activity," it uses the term "conviction," not "violation." *Id.* at 489 n.7. And in *United States v. Hayes*, 555 U.S. 415 (2009), the Court held that a statute defining a prior conviction for a "misdemeanor crime of domestic violence" referred in part to the defendant's actual conduct, not the statutory elements of the crime, when it described the prior offense as one "committed by a current or former spouse, parent, or guardian." *Id.* at 426 (emphasis added) (*quoting* 18 U.S.C. § 921(a)(33)(A)); [1]  *cf.*

---

[1]    In the statute at issue in *Hayes*, the term "misdemeanor crime of domestic violence" was defined as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." The Court held that the domestic relation of the perpetrator need not be an element of the offense of conviction; rather, the government may prove as a factual matter that the person who "committed" the offense at issue fell

*Nijhawan v. Holder*, 557 U.S. 29, 32 (2009) (holding that a statutory term describing a prior "offense" referred not to a generic crime but to the "particular circumstances in which an offender committed" that offense "on a particular occasion").

Here, Congress easily could have declared eligible "any defendant convicted under a statute for which the penalties were altered by the Fair Sentencing Act of 2010, so long as that defendant has not already been sentenced in accordance with that Act." Instead, Congress focused specifically on the "violation" that was "committed." Indeed, Congress's use of the word "committed" in Section 404(a) of the First Step Act points especially strongly to the particular facts of the case because Congress added a date-based qualifier: "that was committed before August 3, 2010." Thus, the inquiry into what counts as a "covered offense" necessarily turns on facts specific to the defendant's offense—when it was committed—and not merely the statutory definitions that appear in 21 U.S.C. § 841(b)(1).

Accordingly, Congress intended courts assessing eligibility to take a case-specific approach focusing on the actual violation at issue. Courts therefore should not blind themselves to the actual quantity of crack involved in defendants' offenses—especially if the defendant admitted or did not dispute those quantities. If, as is the case here, the defendant's "violation" involved a quantity of crack that would have triggered the same penalty after enactment of the Fair Sentencing Act, then that defendant's "violation" is not one for which the statutory penalties were modified by

---

within one of the described relationships.

the Fair Sentencing Act. Accordingly, the court did not impose a sentence for a "covered offense," and the defendant is ***ineligible*** for a reduced sentence in any respect.

The defendant's contrary assertion not only undermines the statutory text, but also conflicts with Congress's manifest intent, as it would lead to profoundly unfair and illogical disparities between defendants charged before and after the Fair Sentencing Act. There is no dispute that Congress, in enacting Section 404 of the First Step Act in 2018, was concerned about a particular class of cocaine base defendants: those whose statutory penalties would have been lower but for the fortuity that they were sentenced before August 3, 2010, and therefore could not take advantage of the Fair Sentencing Act. *See Dorsey v. United States*, 567 U.S. 260 (2012). For instance, if a crime involved 200 grams of crack, and the defendant was sentenced under Section 841(b)(1)(A) before August 3, 2010, a court should consider whether to grant a reduced sentence, as the Fair Sentencing Act places the 200-gram offense in Section 841(b)(1)(B). This relief puts the offender in an identical position to those sentenced after August 3, 2010. If, however, the original crime involved at least 280 grams of crack, the defendant's violation would have triggered the same Section 841(b)(1)(A) penalties both before and after the Fair Sentencing Act. If such a defendant had been sentenced after the Fair Sentencing Act, all agree that he could not obtain a discretionary reduction of sentence today. But under the defense approach, had that same defendant been sentenced before the Fair Sentencing Act

11

took effect, he would now be entitled to a discretionary reduction of sentence. Nothing in the text or legislative history of the First Step Act suggests that Congress would have countenanced this asymmetry, which is entirely unfair to defendants sentenced after enactment of the Fair Sentencing Act.

This case illustrates the point. As explained, the defendant's offense indisputably involved more than 50 grams of crack. Every crack offender charged with and convicted of such a crime since August 3, 2010, has been sentenced under that same provision. If the defendant here were to receive a sentence reduction based on the fiction that his offense involved only 50 grams of crack, his statutory sentencing exposure would be lower than that faced by everyone who was charged with the same crime after August 3, 2010. The purpose of the First Step Act was to reconcile the disparity between those sentenced before the Act and those sentenced afterwards. It would turn that goal on its head to instead afford greater relief, untethered to any actual facts, to earlier offenders.

To make matters worse, under the defense approach, nearly every defendant charged under Sections 841(b)(1)(A) or (b)(1)(B) before the Fair Sentencing Act would now be eligible for a sentence reduction. Before the Fair Sentencing Act, there was no reason for any prosecutor to allege in an indictment more than 50 grams for a subsection A offense or more than 5 grams for a subsection B offense. Under the Fair Sentencing Act, however, those specific quantities—50 grams and 5 grams—are treated less severely. Thus, under the defense view, nearly every defendant charged

under those statutes would be treated differently from identically situated defendants charged after the Fair Sentencing Act became effective, even if their violations involved crack quantities substantially exceeding the new statutory thresholds. The defendant does not, and cannot, offer any justification for the mass disparity he seeks, or any explanation of why Congress would have intended such an odd result.

Instead, the defense suggests that denial of eligibility at this time, resting on the factual determinations made at the original sentencing, would violate the rulings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), that any fact *increasing* either a statutory maximum or mandatory minimum penalty must be charged in an indictment and found by a jury or admitted by the defendant.  But these cases do not apply here, because the First Step Act authorizes a court only to "reduce" a sentence, not increase it, and further makes clear that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c).

The situation matches that in *Dillon v. United States*, 560 U.S. 817 (2010). There, the Court considered a motion for sentencing reduction under 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) allows a court to reduce a sentence, in its discretion, upon adoption of a sentencing guideline amendment designated by the Sentencing Commission as retroactive. The Commission's policy statement implementing Section 3582(c)(2) decreed that a court could not, except in limited, specified circumstances,

reduce a sentence below the range set by the amended guideline provision. Defendants objected that a further reduction should be allowed under *Booker v. United States*, 543 U.S. 220 (2005), which rendered the guidelines advisory to remedy a violation of *Apprendi*.

The Supreme Court disagreed. It stated that "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding." Rather, it allows courts to "reduce" a sentence of imprisonment in limited circumstances identified by the Sentencing Commission. The Court explained:

> Given the limited scope and purpose of § 3582(c)(2), we conclude that proceedings under that section do not implicate the interests identified in *Booker*. Notably, the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather, § 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.
>
> Viewed that way, proceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range.

*Id.* at 828. This same reasoning applies with full force here for a motion to reduce sentence authorized by Section 3582(c)(1)(B). The retroactive application of the Fair Sentencing Act is not constitutionally compelled, but rather is an act of Congressional lenity. That is because, as an ordinary rule and absent a Congressional declaration,

new statutory provisions do not abrogate prior penalties. See 1 U.S.C. § 109. The First Step Act solely calls for the court to determine whether the statutory penalties would have been different based on the "violation" the defendant "committed," and if so, exercise discretion in determining whether to reduce the sentence.

Further, *Dillon* observed, "[i]t is also notable that the provision applies only to a limited class of prisoners—namely, those whose sentence was based on a sentencing range subsequently lowered by the Commission. Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 560 U.S. at 825-26.

Here, the legislation at issue uses precisely the same term as that seen in Section 3582(c)(2), providing authorization to "reduce" a sentence, not reimpose it. Further, as in the Section 3582(c)(2) context, the Act applies only to a narrow set of offenders, i.e., those who committed crack cocaine offenses and were sentenced before August 3, 2010. And the Act expressly states that the court is not required to reduce any sentence.

Finally, the *Dillon* Court added:

This understanding of § 3582(c)(2) as a narrow exception to the rule of finality finds further support outside the statute. Federal Rule of Criminal Procedure 43 requires that a defendant be present at "sentencing," see Rule 43(a)(3), but it excludes from that requirement proceedings that "involv[e] the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)," Rule 43(b)(4). Like § 3582(c)(2), Rule 35 delineates a limited set of circumstances in which a sentence may be corrected or reduced. Specifically, it authorizes a court to "correct a

sentence that resulted from arithmetical, technical, or other clear error" within 14 days after sentencing, Rule 35(a), and it authorizes a reduction for substantial assistance on the Government's motion, Rule 35(b). Rule 43 therefore sets the proceedings authorized by § 3582(c)(2) and Rule 35 apart from other sentencing proceedings.

*Dillon*, 560 U.S. at 827-28. Rule 43 by its term applies to *all* motions under Section 3582, not just motions under Section 3582(c)(2) based on retroactive guideline amendments. Rule 43 therefore applies here, where the sentencing reduction is authorized by Section 3582(c)(1)(B), and thus the Supreme Court's explanation applies here too. These proceedings, as in *Dillon*, do not warrant the application of *Apprendi* or *Alleyne*.

Given the holding in *Dillon*, every appellate court to address the issue has held that a court, when determining whether a defendant is eligible for a sentencing reduction under Section 3582(c)(2) based on a retroactive amendment to the narcotics sentencing guideline, which is driven by drug quantity, may make factual findings based on the original record to determine whether the offense involved a quantity that results in the same sentencing range under the amended guideline and therefore renders the defendant ineligible for relief. *See, e.g., United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014); *United States v. Peters*, 843 F.3d 572, 578 (4th Cir. 2016); *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012); *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *United States v. Anderson*, 707 F.3d 973, 975 (8th Cir. 2013); *United States v. Mercado-Moreno*, 869 F.3d 942, 953–55 (9th Cir. 2017); *United States v. Battle*, 706 F.3d 1313, 1319 (10th Cir. 2013); *United States v.*

16

*Hamilton*, 715 F.3d 328, 340 (11th Cir. 2013); *United States v. Wyche*, 741 F.3d 1284, 1293 (D.C. Cir. 2014). In reasoning that is directly applicable to the present situation as well, the Ninth Circuit explained:

> Typically, in those cases, neither the court nor the parties anticipate a future Guidelines amendment that will move the line and require further fact-finding to determine the defendant's eligibility for a sentence reduction under § 3582(c)(2).
>
> In those cases where a sentencing court's quantity finding is ambiguous or incomplete, a district court may need to identify the quantity attributable to the defendant with more precision to compare it against the revised drug quantity threshold under the relevant Guidelines amendment. The Supreme Court indicated that such fact-finding was permissible in *Dillon*. See 560 U.S. at 828-29 (stating that "facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment").

*Mercado-Moreno*, 869 F.3d at 954. The same fact-finding is necessary here to compare the drug quantity attributable to the defendant against the revised drug quantity thresholds under the Fair Sentencing Act, and is not restricted by *Apprendi* and *Alleyne*. In this case, however, the fact-finding is easy: It is undisputed that the defendant's offense involved at least 1.19 kilograms of crack.

It also bears emphasis that any reduction in sentence under the First Step Act must comport with Section 3582(c)(1)(B), which states, "[t]he court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent ***otherwise expressly permitted by statute*** . . . ." (emphasis added). The First Step Act allows imposition of a reduced sentence as if the Fair Sentencing Act "were in effect at the time the covered offense

was committed." It does not "expressly" authorize the retroactive application of *Apprendi* and *Alleyne*, which are inapplicable for this reason as well. Courts, including the Seventh Circuit, are unanimous in holding that *Apprendi* [2] and *Alleyne*[3] do not apply retroactively to undermine an otherwise final judgment, and Congress did not expressly state otherwise here. It did not decree that only this small set of offenders sentenced before August 3, 2010—those who committed crack cocaine offenses for which the statutory sentencing ranges have changed—may receive consideration under *Apprendi* and *Alleyne*, while no one else may. In contrast, where Congress authorizes *de novo* resentencing, it states that authority explicitly. *See, e.g.,*

---

2   *Apprendi* does not apply retroactively on collateral review. *Love v. Menifee,* 333 F.3d 69, 73 (2d Cir. 2003); *United States v. Swinton*, 333 F.3d 481 (3d Cir. 2003); *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001); *United States v. Brown*, 305 F.3d 304, 307-10 (5th Cir. 2002); *Goode v. United States*, 305 F.3d 378, 382 85 (6th Cir. 2002); *Curtis v. United States*, 294 F.3d 841, 842 44 (7th Cir. 2002); *United States v. Moss*, 252 F.3d 993, 997 1001 (8th Cir. 2001); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 667-71 (9th Cir. 2002); *United States v. Mora*, 293 F.3d 1213, 1218-19 (10th Cir. 2002); *McCoy v. United States*, 266 F.3d 1245, 1256-58 (11th Cir. 2001).

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), consistent with all of these decisions, the Supreme Court held that *Ring v. Arizona*, 536 U.S. 584 (2002), which, in reliance on *Apprendi*, held that aggravating circumstances in a death penalty prosecution must be found by a jury rather than a judge, does not apply retroactively on collateral review. The Court explained that judicial fact finding might actually be more accurate, and in any event does not so "seriously diminish" accuracy that there is an "'impermissibly large risk'" of punishing conduct the law does not reach. 542 U.S. at 355-56 (citations omitted).

3   *Alleyne* does not apply retroactively on collateral review. *Butterworth v. United States*, 775 F.3d 459, 465-468 & n.4 (1st Cir. 2015); *United States v. Redd*, 735 F.3d 88, 91-92 (2d Cir. 2013) (per curiam); *United States v. Reyes*, 755 F.3d 210, 212-13 (3d Cir. 2014); *United States v. Stewart*, 540 F. App'x 171 (4th Cir. 2013) (per curiam) (unpublished); *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013) (per curiam); *In re Mazzio*, 756 F.3d 487, 489-91 (6th Cir. 2014); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *Walker v. United States*, 810 F.3d 568, 575 (8th Cir. 2016); *Hughes v. United States*, 770 F.3d 814, 817-19 (9th Cir. 2014); In re Payne, 733 F.3d 1027, 1029-30 (10th Cir. 2013) (per curiam); *United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014).

18 U.S.C. § 3742(f) and (g) (resentencings on remand following direct appeal); 28 U.S.C. § 2255(b) (resentencings in habeas context).

This Court therefore can and should determine whether the defendant's violation involved quantities that would have triggered the same penalties had the Fair Sentencing Act been in effect. Here, it is evident that the same sentencing range would have applied, and the defendant is not eligible for relief.

Several courts have thoroughly scrutinized and ultimately agreed with the Government's positon set forth above. Judge Hinkle, for example, in a lengthy opinion in *United States v. Blocker*, 2019 WL 2051957 (N.D. Fla. Apr. 25, 2019), observed that the defense position "would not eliminate disparity but instead would introduce enormous disparity in the opposite direction, giving earlier crack defendants a lower penalty range not available to later crack defendants." *Id.* at *5. The court identified another absurdity in the defense position:

> Similarly, the Fair Sentencing Act was intended to lower the sentencing disparity between crack and powder, changing the 100-to-1 drug-amount ratio to approximately 18-to-1. The First Step Act was intended to give that same benefit to earlier crack defendants. The offense-controls theory [determining eligibility based on actual conduct] accomplishes that result. But if sentences for crack offenses are now lowered based on the indictment-controls theory [looking only to the charge in the indictment], an enormous disparity will be created in the opposite direction. Many defendants who committed crack offenses prior to adoption of the Fair Sentencing Act will be subject to lower penalty ranges than defendants who committed offenses involving the same amount of powder.
>
> Consider, for example, two defendants, one who conspired in 2007 to distribute 5 kilograms of powder, and the other who conspired to distribute 5 kilograms of crack, both with two prior felony drug convictions. In 2007, before adoption of the Fair Sentencing Act, both

would have been subject to mandatory life sentences—the powder defendant because the offense involved 5 kilograms or more, and the crack defendant because the offense involved 50 grams or more. The indictments would have tracked the statute, so the powder defendant's indictment would have charged 5 kilograms or more of powder, and the crack defendant's indictment would have charged 50 grams or more of crack. If both were convicted, both would have faced mandatory life sentences.

Under the offense-controls theory, nothing would change. Both defendants would still be subject to mandatory life sentences, just as two defendants who committed the same offenses today would be subject to mandatory life sentences.[ ] There is no reason to believe Congress intended any different result.

But under the indictment-controls theory, the crack defendant would now face a minimum of only 10 years, not life, because he would be treated as having committed an offense involving only 50 grams of crack—not 280 or more as required to trigger the life sentence. This would be the result even though the offense actually involved 5 kilograms of crack and the government could prove it. The powder defendant, in contrast, would continue to serve the mandatory life sentence, because nothing in the Fair Sentencing Act or First Step Act allows a sentence reduction for a defendant whose offense involved only powder. Congress could not have intended to treat crack defendants this much more favorably than powder defendants.

*Id.* at *6; *see also United States v. Russo*, 2019 WL 1277507, at *1 (D. Neb. Mar. 20, 2019) ("[T]he Court cannot conclude that the First Step Act anticipates a full re-sentencing with application of laws and Guidelines that have changed since a defendant's original sentencing, other than the retroactive application of the reduced penalties for crack cocaine set out in the Fair Sentencing Act. If the Court were to engage in such a re-sentencing, applying other laws and Guidelines that have been changed since Russo's original sentencing, it would work an injustice to offenders

sentenced in the past who did not have a crack cocaine conviction qualifying for sentence reduction pursuant to the Fair Sentencing Act of 2010.").

Several other courts thus far have agreed that eligibility is determined based on the actual quantity involved in the offense. *See United States v. Banuelos*, 2019 WL 2191788 (D.N.M. May 21, 2019) (agreeing with the Government's quantity position); *United States v. Haynes*, 2019 WL 1430125, at *2 (D. Neb. Mar. 29, 2019); *United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *cf. United States v. Glover*, 2019 WL 1924706, at *7 (S.D. Fla. May 1, 2019) (holding that *Apprendi* does not apply to a resentencing under Section 404).

Other courts, some of which are cited by the defendant, have disagreed and determined eligibility based only on the pre-Fair Sentencing Act quantity charged in the indictment. *See United States v. Allen*, 2019 WL 1877072, at *3 (D. Conn. Apr. 26, 2019); *United States v. Dodd*, 2019 WL 1529516, at *2-3 (S.D. Iowa Apr. 9, 2019); *United States v. Broussard*, 2019 U.S. Dist. LEXIS 72844, at *5-6 (D. Minn. Apr. 19, 2019); *United States v. Simons*, 2019 WL 1760840, *6 (E.D.N.Y. Apr. 22, 2019); *United States v. Martin*, 2019 WL 1558817, *3 (E.D.N.Y. Apr. 10, 2019); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Pugh*, 2019 WL 1331684, at *3 (N.D. Ohio Mar. 25, 2019); *United States v. Pierre*, 2019 WL 1495123, at *5 (D.R.I. Apr. 5, 2019); *United States v. Stanback*, 2019 WL 1976445, at *3 (W.D. Va. May 2, 2019); *United States v. Laguerre*, 2019 WL 861417, at *3 (W.D. Va. Feb. 22, 2019); *United States v. Glore*, 2019 WL 1060838, at *6 (E.D. Wis. Mar. 6,

21

2019); *see also United States v. Francis*, 2019 WL 1983254, *2 (S.D. Ala. May 3, 2019) (declining to look to original findings to determine statutory penalties, but relying on original findings to assess amended guideline range); *United States v. Trenton,* 01-CR-0079-NJR at *5-6 (SDIL May 6, 2019).

Most of these decisions, however, present little or no reasoning, and the few that do are unpersuasive. For instance, in a statement relied upon by many courts, the district court in *Davis* simply declared reliance on the "plain language" of the First Step Act, adding, "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act," without any assessment of the statutory analysis presented here. *Davis*, 2019 WL 1054554, at *2-3. Indeed, none of the adverse decisions cited above address in any respect the dispositive statutory language in both the First Step Act and in Section 3582(c)(1)(B) discussed here.

In *Allen*, the court focused on "the purpose underlying the First Step Act," stating "that Congress wanted to further the Fair Sentencing Act's objective of mitigating the effects of a sentencing scheme that had a racially disparate impact. *See Dorsey*, 567 U.S. at 268. Given this remedial purpose, the First Step Act should be construed to provide courts with discretion to reduce a sentence when the statute the defendant violated has been modified by the Fair Sentencing Act to provide less severe penalties." *Allen*, 2019 WL 1877072, at *3. But it in no way advances the remedial purposes of the Act to afford relief to a defendant that is greater than he would have received had his sentence been imposed after enactment of the Fair

Sentencing Act. Rather, it is the government's position here that advocates and urges like treatment of like offenders, consistent with the Congressional purpose, with relief afforded to those whose statutory sentencing ranges were in fact lowered by the Fair Sentencing Act, and denied to those whose ranges are unaffected.

Allen also suggested that *Apprendi* and *Alleyne* should apply, stating, "Congress legislates in the context provided by constitutional principles." *Id*. at *4. Likewise, *Stanback* stated, "Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so." 2019 WL 1976445, at *3. But as explained above, under the constitutional landscape in recent years, *Apprendi* and *Alleyne* do not apply retroactively to offenders whose judgments were final before those decisions were announced. It is the denial of relief here—like the denial of relief under *Booker* that the Supreme Court affirmed in *Dillon*—that is in fact consistent with recent law. As explained above, it should not be concluded that Congress meant to afford such retroactive relief to a limited set of crack offenders that is not extended to anyone else.

In *Pierre*, the district court took another tack, stating:

> The Government's approach, while reasonable, is problematic in several ways. First, it effectively requires the Court to employ a prosecutor-friendly "way-back machine" to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect. For example, here, the Court is not confident that a well-counseled defendant caught with 28.77 grams of crack cocaine and a reasonable prosecutor from this District would have reached a plea deal of 28 grams or more of crack cocaine, thereby triggering the mandatory

minimum by a mere .77 grams of crack cocaine. Indeed, it seems likely in this Court's experience the parties would have agreed to a plea to a lower quantity.

*Pierre*, 2019 WL 1495123, at \*5. In *Blocker*, the court effectively rebutted that view, stating:

> Had the indictment charged the higher amount of crack—280 grams—on count one, it might or might not have affected Mr. Blocker's decision to plead guilty. The government would have relied on the same drug-amount evidence it relied on at that time and that it now relies on in response to the motion to reduce the sentence. Mr. Blocker might or might not have admitted that the conspiracy involved at least 280 grams of crack. Had he denied it, the government might or might not have been able to prove it beyond a reasonable doubt.
>
> It may not be possible now, after the fact, to resolve with certainty the question about what would have happened. But courts routinely resolve issues on which certainty is elusive, including issues like this one. Thus, for example, courts routinely must decide what would have happened when addressing ineffective-assistance-of-counsel claims on motions under 28 U.S.C. § 2255 or on petitions for writs of habeas corpus under 28 U.S.C. § 2254.

*United States v. Blocker*, 2019 WL 2051957, at \*4 (N.D. Fla. Apr. 25, 2019). In the present case, there is no uncertainty.

Finally, courts have cited the rule of lenity. See *Allen,* 2019 WL 1877072, at \*3; *Pierre*, 2019 WL 1495123, at \*5. But "[a]pplication of the rule of lenity requires more than a difficult interpretative question. Rather, '[t]o invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute.'" *United States v. Flemming*, 617 F.3d 252, 270 (3d Cir. 2010), citing *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (internal quotation marks and citation omitted).

The rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990). For all the reasons stated earlier, there is no such grievous ambiguity in the First Step Act. To the contrary, all tools of statutory interpretation point to the conclusion that an offender whose crack quantity supports the same penalty range under the Fair Sentencing Act that was applied at the original sentencing proceeding is not eligible for relief.

### B. The Government alternatively suggests that proceedings in the case should be stayed pending the resolution of this issue at the appellate level.

Alternatively, the Government respectfully suggests that the Court stay this matter.  On June 4, 2019, the Government filed its notice of appeal in *United States v. Vernon Trenton*, 04-CR-40079-NJR, Doc. 110, which is one of the decisions relied on by defendant in support of his position that *Alleyne* may be applied retroactively in these proceedings, *See* Seventh Circuit Appeal No. 19-2074.   In addition, the Government has also filed a cross notice of appeal on the retroactivity issue in the Eighth Circuit. *See United States v. Goolsby*, Eighth Circuit Appeal No. 19-1754. Thus, this issue is percolating up to the appellate courts.

Williams was sentenced to life imprisonment on July 10, 2001 and he has been in custody since July 13, 2000. Docs. 65, 67. Therefore, it is conceivable that if this Court were to impose the reduced 262-month sentence requested by the defendant in

his motion Williams may be eligible for immediate release. As outlined in detail in this response, the Government asserts that Williams is absolutely not eligible for a reduction in his sentence under the First Step Act and the district courts are currently in disagreement on the issues that drive that decision. If through these appellate proceedings it is determined that the Government is correct in its position that Williams sentence of life imprisonment should stand, release of Williams from prison on this motion prior to resolution of the issue by the circuit courts is a result that could not be undone. Therefore, the Government respectfully suggests that the Court stay this matter to allow the Court the benefit from the outcomes of these appeals in resolving the issue.

**C.  If this Court were to disagree with the Government's position on the retroactivity of *Alleyne* and decline to stay these proceedings the Court should determine whether to exercise its discretion to grant a reduction in sentence and, if so, to what extent based only on the existing Court record without a new hearing because the First Step Act does not authorize a plenary resentencing proceeding.**

If this Court disagrees with the Government's legal assessment of the defendant's eligibility, it should determine whether to exercise its discretion to grant relief and, if so, to what extent based only on the existing court record without a new hearing. The Government steadfastly maintains that Williams is not eligible for a sentencing reduction but, if the Court disagrees, the Government asserts that the Court should impose a sentence of 327 months, which is the high end of the applicable guideline range under the current version of Section 2D1.1, as well as a term of supervised release of no less than eight years, without any further hearing.

26

As discussed in depth above, the First Step Act does not authorize a plenary resentencing proceeding. A sentencing reduction in this matter is authorized under Section 404 of the First Step Act, and by 18 U.S.C. § 3582(c)(1)(B), which states: "The court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." Section 404(b) provides that the court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." That statement logically calls for reconsideration of the sentence based on the legal circumstances in effect at the time of the offense, with the only change being substitution of the new provision of the Fair Sentencing Act for those portions of Section 841(b)(1) applied earlier. Thus, Section 404 of the First Step Act does not contemplate reconsideration of the sentence, or alteration of any sentencing decision other than the application of the portions of Section 841(b)(1) amended by the Fair Sentencing Act of 2010.

As discussed above, in analogous circumstances in *Dillon,* the Supreme Court confirmed that sentencing reduction proceedings stand "as a narrow exception to the rule of finality." 560 U.S. 817 (2010). The Supreme Court held that a reduction of sentence under 18 U.S.C. § 3582(c)(2), based on a guideline amendment declared retroactive by the Sentencing Commission, does not involve a plenary resentencing, nor permit the application of *Booker* to otherwise final sentences, but instead allows

27

only application of the new guideline range as dictated by the Commission. *Id*. In the provision addressed in *Dillon*, the statutory language allowed the court to "reduce" a term of imprisonment based on a retroactively applicable amendment. *Id*. Again, the Supreme Court emphasized that term, and observed, "[i]t is also notable that the provision applies only to a limited class of prisoners—namely, those whose sentence was based on a sentencing range subsequently lowered by the Commission." *Id*. The Court concluded, "Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 560 U.S. at 825-26. The Court therefore decreed that a sentencing court considering application of a reduced guideline range should not reconsider any other aspect of the sentencing decision (such as the criminal history calculation challenged there), or grant any variance under the *Booker* authority. *Id*. at 831.

Although the First Step Act does not incorporate Section 3582(c)(2), the Court's reasoning in *Dillon* strongly supports construing the First Step Act to authorize a similarly curtailed sentencing proceeding. Section 404(b) of the First Step Act authorizes the court to "impose a *reduced* sentence," using the same term that appears in Section 3582(c)(2); it does not permit "further sentencing" or a "resentenc[ing]." *See Dillon*, 560 U.S. at 825 (quoting 18 U.S.C. § 3742(f)–(g)). Likewise, the First Step Act authorizes the court to impose a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the

28

covered offense was committed." This provision, as well as the absence of any other concerning the substantive scope of the proceeding, indicates that Congress contemplated "only a limited adjustment to an otherwise final sentence." *Id.* at 826. And finally, like Section 3582(c)(2), the First Step Act applies only to a limited set of defendants: those who committed an offense before August 3, 2010, and who stand to benefit from the threshold quantity changes in the Fair Sentencing Act. Accordingly, Section 404(b), like Section 3582(c)(2), is properly understood not to authorize a plenary resentencing.

Section 3582(c)(2), addressed in *Dillon*, states that "the court may *reduce* the term of imprisonment." Section 404(b) of the First Step Act states that the court may "*impose a reduced sentence*," while Section 404(c) states: "No court shall entertain a motion made under this section to *reduce* a sentence if the sentence was previously imposed or previously *reduced* in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to *reduce* the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to *reduce* any sentence pursuant to this section." The terminology of the First Step Act follows that of Section 3582(c)(2).

Yet some defendants, like Williams, argue that the singular use of the term "impose a reduced sentence" in Section 404(b) mandates a *de novo* resentencing. This argument is unpersuasive. As one court observed, "[t]he First Step Act's use of the

29

word 'impose' must be read in context. . . . The First Step Act authorizes a court to 'impose a reduced sentence,' and otherwise refers to a proceeding to 'reduce' a sentence. . . . The First Step Act does not call for a full or plenary resentencing." *United States v. Potts*, 2019 WL 1059837, at *3 (S.D. Fla. Mar. 6, 2019). Indeed, in discussing sentence reductions under Section 3582(c)(2)—which are not *de novo* resentencings—the Supreme Court has freely used the word "impose" in relation to the new, lower sentence that results from applying the retroactive amendment. *See, e.g., Dillon*, 560 U.S. at 827 ("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range."). Nothing in the plain meaning of the word "impose" precludes using that word to describe a court's action in reducing a sentence under Section 3582(c), which, consistent with *Dillon*, is not subject to the rules of *Apprendi* and *Alleyne*.

In recent months, every one of many district courts to address these issues, including this Honorable Court, has agreed that no plenary resentencing is warranted upon a motion for reduction of sentence under Section 404, nor is a hearing required. *See, e.g., United States v. Kamber*, 2019 WL 399935, *2 (S.D. Ill. Jan. 31, 2019); *United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *United States v. Glover*, 2019 WL 1562833, at *7-10 (S.D. Fla. Apr. 11, 2019); *United States v. Perkins*, 2019 WL 1578367, at *3 (N.D. Iowa Apr. 3, 2019); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Shelton*, 2019 WL

30

1598921, at *2 (D.S.C. Apr. 15, 2019).

Therefore, the Court may readily resolve the question on the papers. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." As noted earlier, a sentencing reduction in the present matter is authorized under Section 3582(c)(1)(B), which is subject to Rule 43(b)(4). As *Dillon* explained, Rule 43, which "requires that a defendant be present at 'sentencing,' see Rule 43(a)(3), . . . excludes from that requirement proceedings that 'involv[e] the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c),' Rule 43(b)(4)." 560 U.S. at 828.

If the Court rejects our argument and determines Williams is eligible for a reduction in sentence, the Government asserts that the Court should impose a sentence of 327 months imprisonment, followed by a term of supervised release of no less than eight years. The Government would not object to application of the current version of Section 2D1.1 as advocated by the defendant, which would result in an advisory guideline range of 262 to 327 months imprisonment.  It may be argued that Congress, in directing courts to consider a case as if Sections 2 and 3 of the Fair Sentencing Act had been in effect, and nothing more, did not intend alteration of the originally considered guideline ranges, which in this case would be Life. Indeed, the First Step Act did not make retroactive Section 8 of the Fair Sentencing Act, which directed the Sentencing Commission to adjust the crack guideline on the basis of the

statutory changes made in the Fair Sentencing Act. (The Sentencing Commission did so with Amendment 750.) But if the Court were to determine that Williams is no longer subject to a mandatory minimum term of life imprisonment, as a result of retroactive application of the Fair Sentencing Act, the defendant could immediately move under Section 3582(c)(2) and Guidelines Amendments 750 and 782 for retroactive application of the current guideline range. Therefore, the Government would not object to consideration of the current guideline range if this Court decides to reduce the sentence under the First Step Act. But the Government respectfully submits that under that circumstance the Court should imposed a reduced sentence that is at the high end of the modified guideline range, which would be 327 months in prison followed by an eight-year term of supervised release.

## IV.   <u>Conclusion</u>

Because the applicable statutory penalties for Williams' conviction have not changed, he is not eligible for relief under the First Step Act. Accordingly, the Government respectfully request that the Court deny the defendant's motion or alternatively that the Court stay these proceedings until pending appellate cases which raise these exact issues are decided.

Respectfully submitted,

STEVEN D. WEINHOEFT
United States Attorney

s/*Ali M. Summers*

ALI M. SUMMERS

Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
(618) 628-3700 (office)
E-mail:  ali.summers@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 00-CR-40065-JPG |
| | ) | |
| COREY A. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Certificate of Service**

I hereby certify that on June 24, 2019, I electronically filed the **Government's Response to Defendant's Motion to Reduce Sentence** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

AFPD Melissa Day

Respectfully submitted,

STEVEN D. WEINHOEFT
United States Attorney

s/*Ali M. Summers*
ALI M. SUMMERS
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
(618) 628-3700 (office)
E-mail:  ali.summers@usdoj.gov